**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CASE NO.**

KAMEKA DALEY, individually and
on behalf of all others similarly situated,                    **CLASS REPRESENTATION**

     Plaintiff,                                                                  **JURY TRIAL DEMANDED**

v.

JEWISH HOME LIFECARE,

     Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Kameka Daley brings this class action against Defendant Jewish Home Lifecare, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information and personally identifiable health information (together, "PHI") of Plaintiff and approximately 100,000 Class members, including, without limitation: names, addresses, dates of birth, Social Security numbers, and health insurance information.

2.    Defendant operates a senior health care system.

3.    In the course of its business operations, Defendant is entrusted with an extensive amount of Plaintiff's and the Class members' PHI.

4.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PHI, Defendant assumed legal and equitable duties to Plaintiff and the Class members.

1

5.      On or around January 7, 2024, an intruder gained entry to Defendant's database, accessed Plaintiff's and the Class members' PHI, and exfiltrated information from Defendant's systems (the "Data Breach Incident").

6.      Defendant did not notify Plaintiff and the Class members of the incident until August 16, 2024.

7.      Plaintiff's and the Class members' PHI that was acquired in the Data Breach Incident can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PHI to criminals. Plaintiff and the Class members face a lifetime risk of identity theft.

8.      Plaintiff's and the Class members' PHI was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect Plaintiff's and the Class members' PHI.

9.      Until notified of the Data Breach Incident, Plaintiff and Class Members had no idea their PHI had been stolen, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

10.      Defendant disregarded the rights of Plaintiff and the Class members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure their PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PHI of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party.

11.      Plaintiff brings this action on behalf of all persons whose PHI was compromised because of Defendant's failure to: (i) adequately protect their PHI; (ii) warn of Defendant's inadequate

information security practices; and (iii) effectively secure equipment and the database containing protected PHI using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

12.    Plaintiff and Class members have suffered actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PHI; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach Incident; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' PHI against theft and not allow access and misuse of their personal data by others; and (h) the continued risk to their PHI, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PHI, and, at the very least, are entitled to nominal damages.

13.    Plaintiff and Class members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

14.    Plaintiff is, and at all times relevant hereto was, a citizen and resident of Bronx County, New York.

15.    Defendant is, and at all times relevant hereto was, a New York corporation with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a putative class action involving thousands of Class Members and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Moreover, many absent Class Members and Defendant are citizens of different states.

17.    This Court has general personal jurisdiction over Defendant because Defendant's tortious conduct occurred in part within this jurisdiction and Defendant knew or should have known that Plaintiff would suffer harm in this jurisdiction because Defendant is aware of where Plaintiff is domiciled.

18.    Venue is proper in this district under 28 U.S.C. §§ 1391(a)(1), 1391(b)(1), 1391(b)(2), and 1391(c)(2) as a substantial part of the events giving rise to the claims emanated from activities within this district.

## FACTS

19.    On or around January 7, 2024, an intruder gained unauthorized access to Defendant's database.

20.    On or about August 16, 2024, Defendant mailed Plaintiff and the Class members a form notice attempting to minimize the Data Breach Event, while admitting that sensitive PHI had been compromised and stolen.

21.     Contrary to the self-serving narrative in Defendant's form notice, Plaintiff's and Class members' unencrypted information may end up for sale on the dark web and/or fall into the hands of companies that will use the detailed PHI for targeted marketing without the approval.

22.     At the time of the Data Breach Incident, Defendant maintained Plaintiff's and the Class members PHI in its database and systems.

23.     By obtaining, collecting, and storing Plaintiff's and Class members' PHI, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PHI from disclosure.

24.     Sophisticated companies like Defendant are aware of the different types of threat actors operating across the internet and the types of criminal acts that cyber thieves employ for profit. Accordingly, it is imperative that Defendant guard against those criminal exploits.

25.     Plaintiff and Class members relied on Defendant to keep their PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

26.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class members' PHI from involuntary disclosure to third parties.

27.     Prior to the Data Breach Incident, Defendant should have (i) encrypted or tokenized the sensitive PHI of Plaintiff and the Class members, (ii) deleted such PHI that it no longer had reason to maintain, (iii) eliminated the potential accessibility of the PHI from the internet and its website where such accessibility was not justified, and (iv) otherwise reviewed and improved the security of its network system that contained the PHI.

28.     Prior to the Data Breach Incident, on information and belief, Defendant did not (i) encrypt or tokenize the sensitive PHI of Plaintiff and the Class members, (ii) delete such PHI that it no

longer had reason to maintain, (iii) eliminate the potential accessibility of the PHI from the internet and its website where such accessibility was not justified, and (iv) otherwise review and improve the security of its network system that contained the PHI.

29.     Contrary to industry-standard practices, Defendant failed to encrypt Plaintiff's and Class Members' PHI, failed to delete it after it no longer needed to be retained, stored it in a vulnerable, internet-accessible environment, failed to monitor and detect its movement from Defendant's network to the internet in real time, and failed to monitor or audit the practices of Defendant's cybersecurity vendors, if any. Had Defendant implemented such expected measures, the Data Breach Incident could have been prevented or mitigated.

30.     Defendant also failed to monitor or audit the cybersecurity practices of its cybersecurity vendors, continued to accept and store PHI even after it knew or should have known of the Data Breach Incident, and unreasonably delayed in providing notice of the Data Breach Incident to Plaintiff and Class Members, who were consequently prevented from taking timely self-protection measures.

31.     Defendant did not use reasonable security procedures and practices suitable or adequate to protect the sensitive, unencrypted information they were maintaining for consumers.

32.     Defendant's security failures also demonstrate that it failed to honor it express and implied promises to Plaintiff and the Class Members, including by failing to:

(a) maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

(b) adequately protect patients' PHI from unauthorized disclosure;

(c) implement policies and procedures to prevent, detect, contain, and correct security violations;

(d)  implement procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports;

(e)  protect against any reasonably anticipated threats or hazards to the security or integrity of PHI; and

(f)  effectively train all members of its workforce on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI.

33.    Had Defendant implemented such data security protocols, the consequences of the Data Breach Incident could have been avoided, or at least significantly reduced (inasmuch as the exposure could have been detected earlier); the amount of PHI compromised could have been greatly reduced; and affected consumers could have been notified—and taken self-protection and mitigating actions—much sooner.

34.    Until notified of the Data Breach, Plaintiff and Class Members had no idea that their PHI had been compromised and that they were—and will continue indefinitely to be—at significant risk of identity theft and other forms of personal, social, and financial harm.

35.    Plaintiff and the Class members have taken reasonable steps to maintain the confidentiality of their PHI, relied on Defendant to keep their PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

36.    Defendant could have prevented the Data Breach Incident by properly securing and encrypting Plaintiff's and Class members' PHI, or Defendant could have destroyed the data, especially old data from former inquiries and/or customers that Defendant had no legal right or responsibility to retain.

37.    Defendant's negligence in safeguarding Plaintiff's and the Class members' PHI is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data, especially in the financial sector.

38.    Defendant is a sophisticated health care entity that knew or should have known that PHI is an invaluable commodity and a frequent target of hackers.

39.    There were a record 1,802 data breaches in 2022, and 1,862 data breaches in 2021, surpassing 2020's total of 1,108 and the previous record of 1,506 set in 2017.

40.    Further, there have been many recent high profile data breaches of other industry leading companies, including Microsoft (250 million records; December 2019), Wattpad (268 million records; June 2020), Facebook (267 million users; April 2020), Estee Lauder (440 million records; January 2020), Whisper (900 million records; March 2020), and Advanced Info Service (8.3 billion records; May 2020).

41.    Defendant knew or should have known that its electronic records, containing sensitive health information, among other valuable personal information, would be and/or had been targeted by cybercriminals.

42.    Defendant was aware of prior data breaches affecting healthcare providers.

43.    PHI is valuable to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200. Anita George, *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs*, Digital Trends (Oct. 16, 2019) https://www.digitaltrends.com/computing/personal-data-sold-onthe-dark-web-how-much-it-costs/. Criminals also can purchase access to entire sets of information obtained

from company data breaches from $900 to $4,500. *In the Dark, VPNOverview*, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the-dark/.

44.     The information compromised in the Data Breach Incident is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach Incident is impossible to "close" and difficult, if not impossible, to change: names, dates of birth, financial history, and sensitive health information.

45.     Despite the prevalence of public announcements and knowledge of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PHI of Plaintiff and the Class members from being compromised.

46.     The ramifications of Defendant's failure to keep secure Plaintiff's and the Class members' PHI are long lasting and severe. Once PHI is stolen, fraudulent use of that information and damage to victims may continue for years.

47.     According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

United States Government Accountability Office, Report to Congressional Requesters, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf

48.     The PHI of Plaintiff and the Class Members was stolen to engage in identity theft and/or to sell it to criminals who will purchase the PHI for that purpose.

49.     Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PHI is stolen and when it is used.

50.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding Plaintiff's and the Class members' PHI, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and the Class members as a result of a breach.

51.     Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class members are incurring and will continue to incur such damages in addition to any fraudulent use of their PHI.

52.     Indeed, in its notice of regarding the incident, Defendant recognized that each victim now faces a present and continuing risk of identity theft and fraud, offering Plaintiff and Class Members limited identity theft protection. These services offered by Defendant are woefully insufficient to protect Plaintiff and Class Members from the lifelong ramifications of having their highly confidential PHI accessed, acquired, exfiltrated, and/or published on the internet.

53.     Making matters worse, Defendant advised Plaintiff and the Class Members that they need to spend their own time and money mitigating the fallout from the Data Breach Incident. In other words, Defendant wants Plaintiff and the Class Members to bear the burden for its negligence.

54.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed and confidential personal information and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

55.     The injuries to Plaintiff and the Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Plaintiff's and the Class members' PHI.

56.     Plaintiff has suffered and will continue to suffer injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PHI being placed in the hands of unauthorized third parties and criminals.

57.     The exposed PHI of Plaintiff and Class Members can be and in certain cases has already been sold to other identity thieves or on the dark web—a hidden network of black-market websites that serves as a "haven for all kinds of illicit activity (including the trafficking of stolen personal information captured through means such as data breaches or hacks)." Ellen Sirull, Paid Content: What is the dark web? FOX NEWS (Mar. 27, 2018), https://www.foxnews.com/tech/paid-content-what-is-the-dark-web. Cyber criminals now can indefinitely access, offer for sale, and use the unencrypted, unredacted PHI of Plaintiff and Class Members for nefarious ends.

58.     Plaintiff has a continuing interest in ensuring that his PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

59.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

60.     Plaintiff and Class Members are presently experiencing substantial risk of out-of-pocket fraud losses, such as loans and accounts opened in their names, fraudulent charges, tax return fraud, utility bills opened in their names, and similar identity theft.

61.     Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PHI as potential fraudsters could use that information to target such schemes more effectively to Plaintiff and Class Members.

62.    Plaintiff and Class Members are also incurring, and may continue incurring for the remainder of their lifetimes, out-of-pocket costs for protective measures such as identity theft protection and credit monitoring fees (for any credit monitoring obtained in addition to or in lieu of the inadequate monitoring offered by Defendant), credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach Incident.

63.    Plaintiff and Class Members also suffered damage to or depreciation of their PHI when it was acquired by the cyber thieves in the Data Breach Incident.

64.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and other accounts and records for misuse. Defendant's own notice of data breach instructs Plaintiff and Class Members regarding the time that they will need to spend monitoring their own accounts and statements.

65.    Plaintiff and Class Members have suffered actual injury as a direct result of the Data Breach Incident. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach Incident relating to:

    (a)  Finding fraudulent loans, insurance claims, tax returns, and/or government benefit claims;

    (b)  Purchasing credit monitoring and identity theft prevention;

    (c)  Placing "freezes" and "alerts" with credit reporting agencies;

    (d)  Spending time on the phone with or at a financial institution or government agency to dispute fraudulent charges and/or claims;

    (e)  Contacting financial institutions and closing or modifying financial accounts; and

(f)  Closely reviewing and monitoring medical insurance accounts, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

66.    Moreover, Plaintiff and Class Members have an interest in ensuring that their PHI, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal, health, and/or financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

67.    Plaintiff has experienced and continues to experience mental anguish and stress related to the disclosure of her PHI, the invasion of her privacy, and the threats of identity theft that she will continue to endure for years.

68.    As a direct and proximate result of Defendant's actions and inaction, Plaintiff and Class Members have suffered a loss of privacy and face a substantial and present risk of harm.

## CLASS ALLEGATIONS

### PROPOSED CLASS

69.    Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" that Plaintiff seeks to represent is defined as:

**All persons whose PHI was accessed and/or exfiltrated during the Data Breach Incident.**

70.    Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

71.    The Data Breach Incident has impacted several thousand persons. The members of the Class, therefore, are so numerous that joinder of all members is impracticable.

72.      Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## COMMON QUESTIONS OF LAW AND FACT

73.      There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: [1] Whether and to what extent Defendant had a duty to protect the PHI Plaintiff and Class members; [2] Whether Defendant failed to adequately safeguard the PHI of Plaintiff and Class Members; [3] When Defendant actually learned of the Data Incident; [4] Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class members that their PHI had been compromised; [4] Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach Incident; [5] Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach Incident to occur; [6] Whether Plaintiff and the Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct; [7] Whether Plaintiff and the Class members are entitled to restitution as a result of Defendant's wrongful conduct; and [8] Whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach Incident.

74.      The common questions in this case are capable of having common answers.  Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

75.      Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

PROTECTING THE INTERESTS OF THE CLASS MEMBERS

76.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

SUPERIORITY

77.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

78.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

79.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-78 as if fully set forth herein.

**Foreseeability**

80.    Prior to the Data Breach Incident, each Defendant knew or should have known that threat attackers were targeting healthcare providers such as Defendant in an effort to obtain personally identifiable information and misuse it to commit fraud and identity theft, particularly when stored in an internet-accessible environment, in at least the following respects:

(a)    Defendant was aware of previous data breaches that had targeted healthcare providers, including breaches that affected information of their competitors;

(b)    Hackers are known to routinely attempt to steal such information and use it for nefarious purposes; and

(c)    Publicly available industry warnings regarding threat attackers' efforts to obtain such information for ransom or misuse were widely and readily available to Defendant.

**Duty, Breach, and Causation**

81.    Prior to the Data Breach, Defendant knowingly and intentionally acquired the PHI of Plaintiff and Class Members.

82.    In knowingly and intentionally acquiring the PHI of Plaintiff and Class Members, Defendant assumed a duty to use reasonable care, including implementing reasonable security practices and procedures, to safeguard the PHI of Plaintiff and Class Members against unauthorized access, acquisition, and misuse.

83.     Defendant failed to use reasonable care by storing the PHI of Plaintiff and Class Members in an internet-accessible environment under the following circumstances:

(a)  The PHI of Plaintiff and Class Members was not encrypted.

(b)  The PHI of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, including the PHI of Plaintiff and Class Members with whom Defendant had not had a relationship for years, was not removed from Defendant's network.

(c)  The movement of the PHI of Plaintiff and Class Members from Defendant's network to the internet was not monitored and detected in real time.

84.     Under like circumstances, a reasonably careful person would have done the following:

(a)  Encrypted the PHI.

(b)  Removed from Defendant's network the PHI that Defendant had no reasonable need to store in an internet-accessible environment, including the PHI of individuals with whom Defendant had not had a relationship for years.

(c)  Monitored and detected in real time the movement of the PHI from the network to the internet.

(d)  Maintained an adequate data security system to reduce the risk of data breaches and cyber attacks.

(e)  Implemented policies and procedures to prevent, detect, contain, and correct security violations.

(f)  Implemented procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports.

(g) Effectively trained all members of its workforce on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of PHI.

85.    By failing to take the above security measures, Defendant breached duties to Plaintiff and the Class Members.

86.    Defendant's negligence directly and in natural and continuous sequence produced or contributed substantially to producing Plaintiff's and Class Members' damages because of the following:

(a) Defendant's failure to encrypt the PHI of Plaintiff and Class Members allowed the threat attacker to acquire their PHI.

(b) Defendant's failure to remove from its network the PHI of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, including the PHI of Plaintiff and Class Members with whom Defendant had not had a relationship for years, allowed the threat attacker to acquire their PHI.

(c) Defendant's failure to monitor in real time the movement of the PHI of Plaintiff and Class Members from Defendant's network to the internet allowed the threat attacker to exfiltrate the PHI without detection and therefore without any attempt to halt the exfiltration before its completion.

87.    But for Defendant's negligence, the damage to Plaintiff and Class Members would not have occurred because of the following:

(a) If Defendant had encrypted the PHI of Plaintiff and Class Members, the threat attacker would not have acquired their PHI.

18

(b) If Defendant had removed from its network the PHI of Plaintiff and Class Members that Defendant had no reasonable need to store in an internet-accessible environment, the threat attacker would not have acquired their PHI.

(c) If Defendant had monitored in real time the movement of the PHI of Plaintiff and Class Members from Defendant's network to the internet, the exfiltration of the PHI could have been halted before its completion.

88.    Defendant's negligence was a legal cause of damage to Plaintiff and Class Members, even if it operated in combination with the acts of the threat attacker, because the acts of and the harmed caused by the threat attacker were reasonably foreseeable, and Defendant's negligence contributed substantially to producing such damage to Plaintiff and Class Members.

**Damages**

89.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, including unauthorized charges; (ii) the loss of the opportunity to control how their PHI is used; (iii) the compromise, publication, and/or theft of their PHI, including the exposure of their PHI on the dark web and the substantial risk of future harm; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the present and continuing risk to their PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake

appropriate and adequate measures to protect the current and former customers' PHI in their continued possession; (viii) damages consisting of the cost of identity theft protection services for the remainder of the lives of Plaintiff and Class Members; and (ix) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PHI resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

90.     Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risk of exposure of their PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI in their continued possession.

91.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are now at an increased risk of identity theft or fraud.

92.     As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

93.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-78 as if fully set forth herein.

94.     A relationship existed between Plaintiff and the Class members and Defendant in which Plaintiff and the Class members put their trust in Defendant to protect their private information and Defendant accepted that trust.

95.     Defendant breached the fiduciary duty that it owed to Plaintiff and the Class members by failing to protect Plaintiff's and the Class members' PHI.

96.     Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and the Class members.

97.     But for Defendant's breach of fiduciary duty, the damage to Plaintiff and the Class members would not have occurred.

98.     Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the Class members.

99.     As a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, including unauthorized charges; (ii) the loss of the opportunity to control how their PHI is used; (iii) the compromise, publication, and/or theft of their PHI, including the exposure of their PHI on the dark web and the substantial risk of future harm; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the present and continuing risk to their PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PHI in their continued possession; (viii) damages consisting of the cost of identity theft protection services for the remainder of the lives of Plaintiff and Class Members; and (ix) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PHI resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

100.    Additionally, as a direct and proximate result of Defendant's breach, Plaintiff and Class Members have suffered and will suffer the continued risk of exposure of their PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI in their continued possession.

101.    As a direct and proximate result of Defendant's breach, Plaintiff and Class Members are now at an increased risk of identity theft or fraud.

102.    As a direct and proximate result of Defendant's breach, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)    An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b)    Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class members' PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and the Class members;

c)    Injunctive relief, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an order: (1) requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws; (2)

requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members; (3) requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Member's personal identifying information; (4) prohibiting Defendant from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database; (5) requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors; (6) requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring; (7) requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; (8) requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems; (9) requiring Defendant to conduct regular database scanning and securing checks; (10) requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as

appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members; (11) requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (12) requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information; (13) requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated; (14) requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves; (15) requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and (16) for a period of 10 years, appointing a qualified and independent third party assessor to conduct attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to

counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

d)  For an award of damages, including actual, consequential, and nominal damages, as allowed by law in an amount to be determined;

e)  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f)  For prejudgment interest on all amounts awarded; and

g)  Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

DATED: August 27, 2024

Respectfully submitted,

**THE LAW OFFICES OF JIBRAEL S. HINDI**

*/s/ Zane C. Hedaya*
Zane C. Hedaya, Esq.
NY Bar No. 6135339
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301
*Pro hac vice to be submitted*

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard

Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Pro hac vice to be submitted*

*Counsel for Plaintiff*